IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH AND LYDIA WILLIAMS, *Plaintiffs,* <br><br> v. <br><br> W.M. BARR & COMPANY, INC., *Defendant.* | Civil No. 24-2062 |

MEMORANDUM

**Costello, J.**                                                                                                 **June 16, 2025**

      In this product liability case, Defendant W.M. Barr & Company, Inc. ("Barr") has moved to dismiss the First Amended Complaint (the "Complaint"), which asserts claims for strict liability (Count I), negligence (Count II), and breach of implied warranty (Count III). Plaintiffs Kenneth and Lydia Williams allege that Barr is responsible for damages that occurred after Kenneth Williams used Barr's linseed oil product. Specifically, Plaintiffs allege that rags saturated with the product caught fire and caused substantial damage to Plaintiffs' property. However, Plaintiffs have failed to sufficiently plead their claims. As an initial matter, the product's container carried warnings about the danger of spontaneous combustion and provided instructions on how to dispose of and handle oil-soaked rags to avoid this danger. Plaintiffs have not alleged sufficient facts to suggest that this warning was inadequate. In addition, Plaintiffs have failed to allege sufficient facts to establish claims based on the design or manufacture of the product. Instead, they have offered mere legal conclusions. Accordingly, as is more fully discussed below, the Court will grant Barr's motion and dismiss the Complaint without prejudice.

**I.     BACKGROUND**

On May 23, 2023, Plaintiff Kenneth Williams used one or more containers of Klean-Strip Boiled Linseed Oil.  ECF No. 7 ¶ 6.  After using the product, Williams placed materials saturated with the oil in a bucket with other cleaning rags.  *Id.* ¶ 7.  A fire erupted from the bucket and allegedly caused damage to Plaintiffs' property.  *Id.* ¶¶ 8-10.

**II.    LEGAL STANDARD**

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff.  *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  However, a "document *integral to or explicitly relied* upon in the complaint" may be considered at the motion to dismiss stage.  *Id.*  Similarly, the court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A document is "undisputedly authentic" if "no party questions [it]."  *First Nonprofit Ins. Co. v. Meenan Oil LLC*, 462 F. Supp.

3d 537, 542 (E.D. Pa. 2020) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)).

### III. DISCUSSION

#### A. Plaintiffs' Strict Liability Claims

Strict liability requires the Plaintiff to allege "(1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 725 (E.D. Pa. 2016) (quoting *Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 (Pa. Super. Ct. 1997)). "Three types of defective conditions give rise to a strict products liability claim: design defects, manufacturing defects, and failure-to-warn defects." *Wright v. Ryobi Technologies, Inc.*, 175 F. Supp. 3d 439, 449 (E.D. Pa. 2016) (interpreting Pennsylvania law). Here, Plaintiffs have alleged warning and design defects.

##### 1. Warning Defect

"[A]n otherwise properly designed product may still be unreasonably dangerous (and therefore 'defective') for strict liability purposes [in Pennsylvania] if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product." *Hatcher*, 167 F. Supp. 3d at 725 (quoting *Pavlik v. Lane Ltd.*, 135 F.3d 876, 881 (3d Cir. 1998)) (alteration in original). Here, Plaintiffs allege that the linseed oil container "failed to adequately warn Plaintiffs and other consumers or users that such product and the byproducts thereof were susceptible to self-heating and spontaneous combustion." ECF No. 7 ¶ 19.

However, the container for the product carried multiple warnings and detailed instructions for handling. Barr attached photographs of the front and rear panels of the product to its Motion to Dismiss. ECF No. 11, Ex. A. The container's front panel warned in bold, capitalized text: "**CAUTION! CAN CAUSE SPONTANEOUS COMBUSTION.**" *Id.* at 1.

The front panel also instructed users to "Read other cautions on back panel," *id.*, which provided the following additional warnings and instructions:

> **RISK OF FIRE FROM SPONTANEOUS COMBUSTION EXISTS WITH THIS PRODUCT.**
>
> Linseed Oil generates heat as it dries. This heat generated as it dries can cause spontaneous ignition of materials contacted by Linseed Oil.
>
> Oily rags or waste and other oily materials can cause spontaneous combustion fires if not handled properly. Immediately after use, and before disposal or storage, you MUST (1) Spread out all oily materials outside to dry by flattening them out to their full size in an airy spot for 24 hours at temperatures about 40° F, or (2) Wash them thoroughly with water and detergent and rinse. Repeat until you have removed all oil from all cloths, tools, rags, paper, clothing, mops and any other materials contacted during use or as a result of an accidental spill. Make certain all wash and rinse water is disposed of down sink drain.
> *Id.* at 2.

Thus, the container explicitly warned Williams of the danger of spontaneous combustion and the proper means for disposing of oily rags. The court may consider the label on the container at this stage because it is an undisputedly authentic document attached to Barr's motion to dismiss, and Plaintiffs' failure-to-warn claim is based on the document.[1] *Pension Benefit Guar. Corp.,* 998 F.2d at 1196; *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 751 (W.D. Pa. 2011) (noting that the "actual warning" provided is central to a failure-to-warn claim).

Plaintiffs, however, contend that the warnings and instructions included on the container were inadequate. In support, Plaintiffs offer only conclusory allegations that the warnings were

---

[1] Plaintiffs have not disputed the authenticity of the labeling. ECF No. 7 ¶ 17 (alleging that linseed oil was labeled by Barr); ECF No. 11-1 at 6, n.1 (noting that the linseed oil container depicted in the attachment to Barr's motion to dismiss was produced by Plaintiff Kenneth Williams at site inspection); ECF No. 14-1 at 7-8 (conceding that product contained warnings).

not sufficiently prominent and conspicuous and did not employ wording, symbols and pictograms that made the risks and proper use of the product clear. ECF No. 7 ¶ 19(a)-(b). Plaintiffs offer no factual allegations demonstrating that the warnings at issue were inadequate. It is undisputed that the packaging of the product included a warning that the linseed oil could spontaneously combust. It is also undisputed that the container provided instructions on how to properly store or clean rags saturated in linseed oil to avoid this danger. The warnings and handling instructions appeared on both the bottom front corner and the entire rear of the container. In addition, the warnings specifically referenced the exact danger that occurred in this case. The container warned Williams not to do exactly the thing that Williams did and, moreover, provided explicit instructions for how to avoid the outcome that Williams experienced. Under these circumstances, Plaintiffs' failure-to-warn claim, as currently alleged, is implausible.

To be sure, Plaintiffs need not plead in "complete detail at the outset of the case the specific content of the warning necessary to offset the risks posed by" the product. *Spear v. Atrium Medical Corp.*, 621 F. Supp. 3d 553, 557-58 (E.D. Pa. 2022). Plaintiffs need only plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the elements necessary to their claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (further citation omitted). But because the label integral to the Complaint states that linseed oil could spontaneously combust under certain conditions, enumerates those conditions, and then provides methods to avoid that danger, Plaintiffs have not alleged sufficient facts to raise their "right [to] relief above the speculative level." *Id.* at 232 (further citation omitted). Because of this, the Court grants Barr's motion to dismiss this claim, but does so without prejudice because it is unclear whether amendment would be futile at this time.

## 2. Design Defect

The Court will also dismiss Plaintiffs' strict liability claims for design defect. Plaintiffs must allege facts that plausibly establish that the product design was defective. *Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 576 (E.D. Pa. 2019) (quoting *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 407-09 (Pa. 2014)). Under *Tincher*, a plaintiff may establish a design defect by proving that the product does not satisfy either the consumer expectations or risk-utility test. *Tincher*, 104 A.3d at 394-95, 397-99. Factors relevant to determining whether a product's design satisfies the consumer expectations test include "[t]he nature of the product, the identity of the user, the product's intended use and intended user, and any express or implied representations by a manufacturer or other seller." *Id.* at 394-95. The relevant standard for the risk-utility test is whether "a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Id.* at 397.

Plaintiffs offer mostly legal conclusions as to their design defect claims. For example, Plaintiffs allege that the linseed oil, because of its tendency to spontaneously combust, "was designed and formulated in a defective and unreasonably dangerous manner when considered under the Pennsylvania Supreme Court's 'consumer expectations' test, 'risk-utility' test, both or otherwise." ECF No. 7 ¶ 19(c). Plaintiffs do not allege sufficient facts as to why the product was defectively designed under the consumer expectations test. Plaintiffs only generally allege that the product was meant to be used by the public and that it tends to spontaneously combust.

Plaintiffs also fail to state a claim under the risk-utility test. Plaintiffs offer no allegations regarding the availability of substitute products, the ability of the manufacturer to eliminate linseed oil's unsafe characteristics in an economical manner, the feasibility on the part of the manufacturer to spread the cost of loss to users of the product, the ability of the user of the

product to avoid injury by using care (based on the formulation or design of the linseed oil), or the usefulness or desirability of the product. *See Tincher*, 104 A.3d at 398-99 (enumerating factors for risk-utility test).

Plaintiffs have not offered enough facts to suggest that the linseed oil would fail to satisfy either the consumer expectations or risk utility test. As with their failure-to-warn claim, Plaintiffs may well be able to establish their claims of design defect with discovery. This does not excuse them of their responsibility to offer factual allegations at the outset to raise a reasonable expectation that discovery could reveal evidence of their allegations. *Phillips*, 515 F.3d at 234. The Court therefore dismisses Plaintiffs' strict liability design defect claims without prejudice.

### C. Plaintiffs' Negligence Claims

With respect to negligence, "a plaintiff 'must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage.'" *Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 852 (E.D. Pa. 2017) (further citation omitted) (interpreting Pennsylvania law). Here, Plaintiffs have alleged that Barr was negligent with respect to warning consumers and with respect to the design and manufacture of the product.

#### 1. Negligent Failure to Warn

In the product liability context, a manufacturer "has a duty to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous." *Id.* at 853 (quoting *Incollingo v. Ewing*, 282 A.2d 206, 220 n.8 (Pa. 1971) (citing *Restatement (Second) of Torts* § 388)). Here, Plaintiffs have not sufficiently alleged how the warning provided was a breach of Barr's duty to warn. Plaintiffs allege that Barr was negligent

7

in "failing to adequately warn and/or instruct Plaintiffs … that the subject product … w[as] susceptible to self-heating and spontaneous combustion." ECF No. 7 ¶ 29(c).  They further allege that Barr failed to provide Plaintiffs "with adequate information, instructions or warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product…" *Id.* ¶ 29(d).  As discussed above, Barr provided this exact warning and information on the container.  ECF No. 11, Ex. A.  Therefore, the Court will dismiss Plaintiffs' negligent failure-to-warn claim without prejudice.

### 2.     Negligent Design

To allege negligent design, Plaintiffs must plead sufficient facts to "plausibly show that the defendant" breached its duty "in the adoption of a safe design." *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 541 (E.D. Pa. 2021) (interpreting Pennsylvania law); *See also Foge, McKeever LLC v. Zoetis Inc.*, 565 F. Supp. 3d 647, 654 (W.D. Pa. 2021) (interpreting Pennsylvania law).  Federal courts have required plaintiffs to provide at least some form of detail regarding the design of the product at issue to survive a motion to dismiss.  *Smith*, 251 F. Supp. 3d at 853-54 (dismissing claim in part because plaintiff did not describe design of product "in any meaningful detail"); *Foge, McKeever LLC*, 565 F. Supp. 3d at 654 (dismissing claim in part because plaintiff did not specify "why the design was flawed").

Here, Plaintiffs do not offer sufficient facts explaining why Barr was negligent in its design of the linseed oil.  Plaintiffs also offer no insight as to what aspect of the formulation of the linseed oil was negligently designed.  Instead, Plaintiffs offer a series of conclusory allegations that distill to the following proposition: Barr was negligent in its design of the linseed oil because linseed oil has the "unreasonably dangerous and hazardous propensity for self-heating and/or spontaneous combustion." ECF No. 7 ¶¶ 19(c), 25, 27, 29(a)-(b), (e)-(h).  These

conclusory allegations do not explain how Barr breached its duty of care "in the adoption of a safe design." *Smith*, 251 F. Supp. 3d at 853-54 (dismissing similar allegations of design defect). Based on the foregoing, the Court will dismiss Plaintiffs' negligent design claim without prejudice.

### 3. Negligent Manufacture

To allege negligent manufacture, Plaintiffs must offer some factual allegations as to what went wrong during the manufacturing process. *McGrain*, 551 F. Supp. 3d at 540. Plaintiffs have not done so. Plaintiffs cite ¶ 29(a) and (b) of the Complaint as their central manufacturing defect arguments. ECF No. 14-1 at 18. These paragraphs offer only conclusions that Barr negligently manufactured the product and "fail[ed] to conform its conduct in … manufacturing" the product. ECF No. 7 ¶ 29(b). These allegations do not offer sufficient facts as to any errors in the manufacturing process. Therefore, the Court cannot discern how Barr's conduct was deficient. *See McGrain*, 551 F. Supp. 3d at 540-41 (dismissing negligent manufacturing claim based on similar factual allegations). Accordingly, the Court will grant Barr's motion and dismiss the negligent manufacturing claim without prejudice.

### D. Implied Warranty of Merchantability

Plaintiffs' claims under the implied warranty of merchantability will also be dismissed. "Pennsylvania's implied warranty of merchantability requires merchantable goods to be of fair or average quality within the description and fit for the ordinary purpose for which such goods are used." *Wright*, 175 F. Supp. 3d at 455 n.5 (citing 13 Pa. C.S. § 2314(a), (b)(2)-(3)). To allege a breach of the warranty, a plaintiff must allege that: "(1) the product malfunctioned, (2) plaintiff used the product as intended or reasonably expected by the manufacturer, and (3) the absence of other reasonable secondary causes." *Id.* Claims for breach of the implied warranty of

merchantability rise and fall with allegations of product defect. *Chandler v. L'Oreal USA, Inc.*, 774 F. App'x 752, 754; See *also McGrain*, 551 F. Supp. 3d at 538-39 (implied warranty of merchantability claims are co-extensive with defect claims). Because Plaintiffs have not properly alleged a defect, this claim is dismissed without prejudice.[2]

## IV. CONCLUSION

Because the linseed oil container warned of the product's tendency to spontaneously combust and provided instructions on how to safely handle oily materials, Plaintiffs' allegations concerning Barr's failure to warn are implausible. In addition, Plaintiffs' design and manufacturing defect claims consist of mere legal conclusions insufficient to survive a motion to dismiss. Accordingly, the Complaint will be dismissed without prejudice and with leave to amend.

An appropriate Order will follow.

BY THE COURT:

_____
MARY KAY COSTELLO, J.

---

[2] Plaintiffs did not explicitly plead a claim for a breach of the implied warranty for fitness for a particular purpose. A party cannot amend their complaint during briefing on a motion to dismiss. *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). To the extent that the Complaint could be construed to plead such a claim, it fails. An "implied warranty of fitness for a particular purpose is established: 'where the seller at the time of contracting has reason to know: (1) [of] any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods.'" *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 344 (E.D. Pa. 2022) (quoting 13 Pa. C.S. § 2315). "A particular purpose is one that is 'peculiar to the nature of his business' and 'is based upon a special reliance by the buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer.'" *Id.* (further citation omitted). "A particular purpose is different than an ordinary purpose." *Id.* Plaintiffs did not allege a particular purpose different than an ordinary use for the linseed oil. ECF No. 7 ¶¶ 6-7.